UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:24-cv-07449 MWC (PDx)            Date: March 7, 2025

Title  James Connor v. O Positive, LLC *et al.*

Present: The Honorable:   Michelle Williams Court, United States District Judge

| T. Jackson | No Reporter |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

Attorneys Present for Plaintiffs: N/A      Attorneys Present for Defendants: N/A

**Proceedings: (IN CHAMBERS) ORDER DENYING PLAINTIFF'S MOTION TO REMAND (DKT. 20)**

     Before the Court is a motion to remand filed by Plaintiff James Connor ("Plaintiff"). Dkt. # 20 ("*Mot.*"). Defendant O Positive, LLC ("Defendant") timely filed an opposition to the motion, Dkt. # 21 ("*Opp.*"), and Plaintiff replied, Dkt. # 22 ("*Reply*"). The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the papers and exhibits, the Court **DENIES** Plaintiff's motion to remand.

I.    Background

     On July 8, 2024, Plaintiff, individually and on behalf of all others similarly situated, filed a class action lawsuit against Defendant in the Superior Court of California, County of Los Angeles. Dkt. # 1, Ex. B ("*Compl.*"). Plaintiff's complaint alleged eight causes of action: (1) continuing wages under California Labor Code ("Labor Code") §§ 201.3, 201.5, 203 and/or 204, (2) failure to provide meal breaks under Labor Code §§ 226.7, 512, and IWC Wage Order, (3) failure to provide rest breaks under Labor Code § 226.7 and IWC Wage Order, (4) failure to provide minimum wages under Labor Code §§ 1194, 1194.2, and 1198, (5) failure to reimburse business expenses under Labor Code § 2802, (6) payroll records under Labor Code § 2802, (7) personnel records under Labor Code § 1198.5, and (8) unfair business practices under the California Business and Professions Code. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# CIVIL MINUTES – GENERAL

Case No.  2:24-cv-07449 MWC (PDx)                                         Date: March 7, 2025

Title   James Connor v. O Positive, LLC *et al.*

On August 30, 2024, Defendant filed a notice of removal pursuant to the Class Action Fairness Act ("CAFA").  Dkt. # 1 ("*Notice of Removal*").[1]  On February 3, 2025, Plaintiff filed this motion to remand, arguing that Defendant has failed to establish the amount in controversy.  *Mot.*  Defendant responded that this Court has jurisdiction because approximately $48,930,420 in damages are in controversy, as follows:

| Waiting Time Penalties | $46,944,000 |
|---|---|
| Meal Break Penalties | $415, 360 |
| Rest Break Penalties | $415,360 |
| Unpaid Minimum Wages | $155,700 |
| Attorneys' Fees | $1,000,000+ |
| Total | $48,930,420 |

II.   Legal Standard

   A.   Motion to Remand

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted).  Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal district court only if the federal court has subject matter jurisdiction over the case.  *See City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997) ("The propriety of removal thus depends on whether the case originally could have been filed in federal court.").  The case shall be remanded to state court if at any time before final judgment it appears a removing court lacks subject matter jurisdiction.  *See* 28 U.S.C. § 1447(c); *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991).

---

[1] In its notice of removal, Defendant also asserted diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) and (b), and § 1441.  *Id.* ¶ 30.  However, in its opposition to Plaintiff's motion to remand, Defendant does not discuss a diversity jurisdiction theory, instead only maintaining that this case's removal was proper pursuant to CAFA.  *See generally Opp.*  Thus, the Court only addresses the CAFA basis for removal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.   2:24-cv-07449 MWC (PDx)                                             Date: March 7, 2025

Title   James Connor v. O Positive, LLC *et al.*

    B.    <u>CAFA</u>

    CAFA provides federal jurisdiction over class actions in which (1) the amount in controversy exceeds $5 million, (2) there is minimal diversity between the parties, and (3) the number of proposed class members is at least 100.  28 U.S.C. §§ 1332(d)(2), (d)(5)(B).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court . . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  While "no antiremoval presumption attends cases invoking CAFA," *Dart Cherokee Basin Operating Co. v. Owens*, 547 U.S. 81, 82 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."  *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).  However, a court should not impose a presumption against CAFA's jurisdiction.  *See Jauregui v. Roadrunner Transp. Servs. Inc.*, 28 F. 4th 989, 993 (9th Cir. 2022) ("[I]t appears the district court had *some* notion that removal under CAFA should be met with a level of skepticism and resistance.  That was incorrect.").

    Under CAFA, a defendant removing a case must file a notice of removal "containing a short and plain statement of the grounds for removal."  *Dart Cherokee*, 574 U.S. at 83 (quoting 28 U.S.C. § 1446(a)).  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," unless the defendant's assertion is contested by the plaintiff.  *Id.* at 89.  Where, a defendant's asserted amount in controversy is contested, then "[e]vidence establishing the amount is required."  *Id.*  "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy has been satisfied."  *Id.* at 82.  "The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'"  *Ibarra*, 775 F.3d at 1197.

    Under this system, a defendant may rely on "reasonable assumptions" to assert that the claims meet the amount-in-controversy requirement.  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra*, 775 F.3d at 1197–99).  As the Ninth Circuit has explained:  "[I]n assessing the amount in controversy, a removal defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'"  *Id.* at 925 (quoting *Ibarra*, 775 F.3d at 1200).  These "assumptions cannot be pulled from thin

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-07449 MWC (PDx)                                                   Date: March 7, 2025

Title   James Connor v. O Positive, LLC *et al.*

air but need some reasonable ground underlying them." *Id.* (quoting *Ibarra*, 775 F.3d at 1198–99). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Id.*

III.   Discussion

The parties do not dispute that there is minimal diversity and class numerosity. *See generally Mot.* The only question the Court needs to resolve is whether Defendant has adequately established that the amount in controversy exceeds $5 million.

   A.   Defendant's Declarations

Plaintiff first attacks the evidence provided by Defendant. Plaintiff contends that Defendant did not provide the payroll records underlying its calculations. *See Reply* 3:14–5:10 ("[T]he declarant vaguely describes an Excel printout . . . . [Defendant's] Declaration purports to summarize information from a lengthy document, all of which may be proper, but only when the opposing party, here Plaintiff, is given the document to confirm the proffered testimony."). Relatedly, Plaintiff claims that Defendant's evidence violates evidence rules, such as lack of authentication. *See id.*

With its removal notice, Defendant provided an initial declaration from Ralph A. Laucella Jr. ("Mr. Laucella"). Dkt. # 1-9 ("*Initial Decl.*"). Mr. Laucella explained that he is Defendant's Founding Partner and Executive Producer and provided information about Defendant, including approximate numbers of crew members who participate in typical commercial production and average hourly wages of crew members. *Id.*

In opposition to Plaintiff's motion to remand, Defendant provided a second, more detailed, declaration from Mr. Laucella. Dkt. # 21-1 ("*Laucella Decl.*"). In this declaration, Mr. Laucella noted that he has held his role with Defendant "for more than 15 years" and has "personal knowledge of the matters set forth" in the declaration. *Id.* ¶ 1. Mr. Laucella describes that he "requested and received data from [Defendant's] payroll services provider," including "time and pay regarding the employees who worked for [Defendant] in California since July 8, 2020 ('Payroll Records')." *Id.* ¶ 2. Mr. Laucella discussed the Payroll Records: "All of these records are kept in the regular course of business and we routinely interact with these records including to approve payroll for payment . . . and resolve any employee issues." *Id.* Mr. Laucella also detailed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-07449 MWC (PDx)                                                                   Date: March 7, 2025

Title   James Connor v. O Positive, LLC *et al.*

the format of the Payroll Records:  "The Payroll Records were in the form of an Excel spreadsheet that encompassed more than 10,000 lines of data and included significant amounts of personally identifiable information for each worker including Social Security Numbers, and addresses."  *Id.*  Mr. Laucella noted that Defendant could make the data available to the Court but did not attach the data to the declaration at this time due to the "large size of the data file and the personally identifiable information" of Defendant's former and current employees.  *Id.*

Mr. Laucella continued that he had "reviewed the Payroll Records personally" and that each statement in his declaration was based on that personal review.  *Id.* ¶ 3.  Mr. Laucella then elaborated on the calculations underlying Defendant's amount in controversy calculation, including an explanation of how television commercial production "shoot days" work.  *See id.* ¶ 4 ("[S]hoot days are the days when virtually all the freelance employees we hire are working.").  From reviewing the Payroll Records (which "explicitly list[] employees' 'work state' . . . and their status as 'non-exempt' . . . [and] the dates each of these employees worked"), Mr. Laucella observed that the "total number of unique non-exempt employees whose 'work state' was listed as California and who worked between July 8, 2020 and August 30, 2024 is 5,192."  *Id.* ¶ 6.  From July 8, 2021 to August 30, 2024, the number was 3,918 (with 3,912 of these employees being hired on a project-by-project basis).  *Id.*  Using the "number of hours worked by each employee" as listed in the Payroll Records, Mr. Laucella calculated that "the median number of hours worked each day by all non-exempt employees working for [Defendant] in California is 10 hours per day."  *Id.* ¶ 7.  Last, Mr. Laucella determined from the Payroll Records that "the median hourly rate paid to non-exempt employees working in California since July 8, 2020 is greater than $40.00 per hour" (as is the median hourly rate since July 8, 2021).  *Id.* ¶ 10 ("I was able to determine this because the list of employees provided by [Defendant's] payroll provider included the base hourly rate paid to each employee.").

Plaintiff objects to Mr. Laucella's declaration, arguing the Payroll Records are not authenticated, are not based on personal knowledge, do not provide foundation, are hearsay, fail to meet the requirements of a "summary" to prove content per Federal Rule of Evidence 1006, that Mr. Laucella's testimony is not proper lay testimony, that the testimony does not establish admissibility as expert opinion, that the testimony fails to establish personal knowledge, and that Mr. Laucella fails to establish foundation for his personal knowledge.  *Reply* 3:14–5:10.  However, this Court routinely accepts similar

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  2:24-cv-07449 MWC (PDx) | Date: March 7, 2025 |
| Title  James Connor v. O Positive, LLC *et al.* | |

declarations as credible evidence to establish CAFA removal.  *See, e.g.*, *Garcia v. William Scotsman, Inc.*, No. CV 24-02977, 2024 WL 4289895, at *3 (C.D. Cal. Sept. 25, 2024) (collecting cases); *Elizarraz v. United Rentals, Inc.*, No. 2:18-CV-09533 ODW (JC), 2019 WL 1553664, *2 (C.D. Cal. Apr. 9, 2019) (denying remand motion when defendant relied on a declaration by an economist who was "provided payroll data" including "employee work hours, earnings, dates of employment, and locations" and testified "to such data as the average rate of pay," "the number of non-exempt employees," "the number of workweeks," and "the number of non-exempt employees whose employment ended during this period"); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 WL 5952181, *2 (C.D. Cal. Nov. 30, 2017) (denying remand where an HR business partner declared personal knowledge of business operations, had access to employment records, and thereby estimated employee numbers, workweeks, and average hourly rates); *Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. CV 17-6166 PSG (FFMx), 2017 WL 4862067, at *2–4 (C.D. Cal. Oct. 26, 2017) (finding declarations from Vice President and Corporate Counsel and Payroll Projects Director that contained "general statistics gleaned from [d]efendant's records, including the number of hourly, non-exempt employees involved in this putative class action, their total number of workweeks, and their average hourly rates" to be sufficient for establishing CAFA amount in controversy).  This Court has determined that a defendant's evidence "must lay foundation—which typically includes personal knowledge, specification of the records, review of those records, and either some form of corroborating evidence or methodology to arrive to the proposed numbers."  *See Hurt v. SH Group Hotels and Residence U.S. LLC*, 2:24-cv-08840 MWC (ASx), 2024 WL 5244725, at *3 (C.D. Cal. Dec. 30, 2024) (collecting cases).  Here, the Court is satisfied that Mr. Laucella's declaration lays foundation, including by explaining his personal knowledge of the Payroll Records, providing specifics of the Payroll Records, detailing his method of reviewing the records, and explaining the methodology behind his calculations.  *See generally Laucella Decl.*

      B.    <u>Waiting Time Penalties</u>

The Court now turns to Plaintiff's first cause of action for waiting time penalties.  Plaintiff's complaint seeks waiting time penalties for Plaintiff and the Code Class Members.  *Compl.* ¶¶ 48, 50.  Plaintiff's complaint defines the "Code Class" as: "For the period three years prior to the filing of this action to date, *all persons paid wages* on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-07449 MWC (PDx)                                                          Date: March 7, 2025

Title   James Connor v. O Positive, LLC *et al.*

account of services provided for Defendant [] such persons are referred to hereafter as Code Class Members[.]" *Id.* ¶ 35 (italics added).

In this motion to remand, Plaintiff argues that Defendant's notice of removal failed to "state how many employees separated from employment during the class period or whether they were employed in . . . California, much less when they were terminated." *Mot.* 15:20–22. Plaintiff further cited to cases "routinely appl[ying]" a lower 20% waiting time penalty in order to argue that Defendant's notice of removal "impermissib[y]" assumed a 100% violation rate. *See id.* 16:9–26 (citing cases applying a 20% to 60% violation rate).

In opposing Plaintiff's remand motion, Defendant has provided additional detail to support its waiting time penalties estimates through Mr. Laucella's second declaration. *See generally Laucella Decl.* For example, based on the Payroll Records, Defendant explained that from July 8, 2021 through August 30, 2024, there were 3,918 total unique non-exempt employees whose "work state" was California. *See Laucella Decl.* ¶ 6. Defendant also calculated, based on the base hourly rate for each employee, that "[t]he median hourly rate paid to non-exempt employees working in California since July 8, 2021 is . . . greater than $40 per hour." *Id.* ¶ 10. Defendant further determined, based on the Payroll Records identifying "the number of hours worked by each employee," that the median number of hours worked each day by all non-exempt employees in California was 10 hours per day. *Id.* ¶¶ 7–8 (noting also that "[t]ypically, employees working on shoot days work standard shifts between 8 and 12 hours"). Defendant has also explained how its business model impacts the waiting time penalties calculation: "The vast majority of employees employed by [Defendant] in California work on a project by project basis, meaning they are hired to work on a specific commercial production for a defined period of time." *Id.* ¶ 8. In fact, out of the 3,918 non-exempt employees who worked in California for Defendant since July 8, 2021, "3,912 of these employees were hired to work on a project-by-project basis." *See id.* ¶ 9 (noting the Payroll Records also "identified which California project each employee on the list worked on"). Thus, for all 3,912 employees, "employment with [Defendant] ended when the project they were hired to work on was completed." *Id.*

Based on these numbers, Defendant calculated that the amount in controversy for waiting time penalties for the Code Class would total $46,944,000 ($40/hour x 10 hours/day x 30 days x 3,912 separated employees). *Opp.* 10:20–11:3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-07449 MWC (PDx)                                                  Date: March 7, 2025

Title     James Connor v. O Positive, LLC *et al.*

      Plaintiff opposes this calculation.  First, Plaintiff argues that it is "puzzling" Defendant merely provided a "median hourly rate," rather than an "average hourly rate" and that a median calculation "is not reasonable as Labor Code § 203 calls for an average daily rate in calculating damages."  *Reply* 1:8–3:12.  Yet, Defendant originally provided the average hourly wage in Mr. Laucella's first declaration attached to its notice of removal:  "The daily wage rates for production crew members vary with their position, from job to job, and over time.  Over the time periods at issue in this case, the average hourly wage paid to production crew members during a commercial shoot was at least approximately $30.00 while many are making significantly more than that."  Dkt. # 1-9, ¶ 11.  Using $30.00 in the calculation instead of $40.00 would not meaningfully change the CAFA analysis (if the other numbers remained the same, the waiting time penalty total would be $35,208,000 instead of $46,944,000).  And notably, the Court cannot simply zero-out the waiting time penalty claim because it might prefer Defendant had presented a calculation using an average rate rather than a median rate.  *See Jauregui*, 28 F. 4th at 994 (reversing district court because "[a]ssigning a $0 value was improper": "[M]erely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative approach.").  The Court thus finds that Defendant's use of a $40.00 daily rate is reasonable, especially given Mr. Laucella's explanation for the calculation.  *See Laucella Decl.* ¶ 10 ("I was able to determine [that the median hourly rate for non-exempt employees in California since July 8, 2021 is greater than $40 per hour] because the list of employees provided by [Defendant's] payroll provider included the base hourly rate paid to each employee.  These numbers are also consistent with what my experience and expectations having worked for [Defendant] for more than 15 years.").

      Plaintiff also argues that Defendant's assumed 100% violation rate "is not a fair reading of Plaintiff's complaint," evidenced by two wage statements showing "Defendant in fact does pay some meal break penalties."  *See Reply* 5:12–26.  In analyzing Plaintiff's waiting time penalty allegations and a reasonable violation rate, the Court turns to Plaintiff's complaint.  *See Arias*, 936 F.3d at 925 ("An assumption may be reasonable if it is founded on the allegations of the complaint.").  Plaintiff's complaint states:

- "Defendants employed Plaintiff as a crew member.  Plaintiff was not paid all wages."  *Compl.* ¶ 46.
- "Plaintiff and Code Class Members consistently worked more than 6-hour and/or 12-hour shifts.  However, they were required to keep their walkie

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:24-cv-07449 MWC (PDx)                                    Date: March 7, 2025

Title     James Connor v. O Positive, LLC *et al.*

    talkies, radios and/or cell phones on their persons, turned on and audible *at all times*, including during their rest periods and meal breaks and/or they were precluded from leaving the set and its immediate environs during their breaks, all due to the requirements of the Filmmakers Code of Professional Responsibility. Accordingly, they were denied their breaks and are entitled to an additional thirty minutes for wages for each faux meal break, funds which remain unpaid." *Id.* ¶ 48; *see also id.* ¶ 16 ("Most breaks were simply not provided at all.").

- "Defendants' failure to compensate . . . was and is 'willful.'" *Id.* ¶ 49.
- "Pursuant to section 203 of the Code, Plaintiff and Code Class Members are entitled to continuing wages from Defendants in an amount according to proof, and Plaintiff is entitled to penalties of at least $30,000." *Id.* ¶ 50.

    In other words, Plaintiff seeks to recover waiting time penalties on a derivative basis by alleging that Plaintiff and the Code Class Members were not properly paid final wages owed to them because their final wages did not adequately compensate them for missed meal periods and rest breaks (Plaintiff alone seeks $30,000 in waiting time penalties). *See generally id.*

    As an initial matter, courts have determined that when a defendant limits its waiting time calculation to the number of "separated" employees (like here), then the defendant is not technically applying a 100% violation rate—instead it is applying a more specific assumption. *See Garcia*, 2024 WL 4289895, at *7 ("[A]t least one court has concluded that when a defendant limits its waiting time calculation to the number of 'separated' employees . . . then the defendant is making a more specific assumption than a blanket 100% violation rate." (citation omitted)); *Gonzalez v. Barnard Construction Co., Inc.*, No. 22-cv-00534-AJB-KSC, 2022 WL 17061065, at *3 (S.D. Cal. Nov. 17, 2022) ("Defendants calculated the waiting time penalties using only the number of class members . . . separated from employment . . . . This is not the full class size, and thus, not a 100% violation rate.").

    Moreover, Plaintiff uses broad language in the complaint, including that "at all times" the Class Code members were "required to keep their walkie talkies, radios and/or cell phones on their persons, turned on and audible." *Id.* ¶ 48. And Plaintiff individually (one of 3,912 separated employees) seeks $30,000 for his waiting time penalties. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:24-cv-07449 MWC (PDx)                                             Date: March 7, 2025

Title   James Connor v. O Positive, LLC *et al.*

¶ 50.  Plus, this Court cannot merely zero-out a claim because it prefers an alternative assumption, as instructed by the Ninth Circuit in *Jauregui*:

> Recognizing that the amount in controversy is supposed to be an estimate of the *entire* potential amount at stake in the litigation demonstrates the unrealistic nature of assigning $0 to five out of seven of Plaintiff's claims. Of course, if a defendant provided *no* evidence or clearly inadequate evidence supporting its valuation for a claim, then it might be appropriate . . . . But that is not what happened here.  [Defendant] offered substantial evidence and identified assumptions to support its valuation . . . . In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim . . . . The [zero-out] approach used by the district court turns the CAFA removal process into an unrealistic all-or-nothing exercise of guess-the-precise-assumption-the-court-will-pick—even where, as here, the defendant provided substantial evidence and analysis supporting its amount in controversy estimate.

28 F. 4th at 994 (emphasis in original).

However, the Court agrees with Plaintiff that a reduced violation rate is warranted based on Plaintiff's evidence that "Defendant in fact does pay *some* meal break penalties" and thus does not necessarily owe waiting time penalties to each of the 3,912 separated employees (as contemplated by Defendant's calculation).  *See Reply* 5:12–26 (emphasis added).

Thus, based on all of these considerations, the Court adopts a 20% violation rate—which Plaintiff himself in his motion to remand suggested was justified based on his complaint's allegations.  *See Mot.* 15:4–6 ("Plaintiff uses the terms 'routinely,' and 'consistent.'  In our removal jurisdiction, information concerning a policy or practice is regularly interpreted to mean a violation rate of 20-25%, not 100%." (collecting cases)); *see also id.* 16:16–21 (indicating that a 20-60% violation rate would be justified for waiting time penalties specifically).

Accordingly, assuming a 20% violation rate (and tying the calculation to the number of separated employees), the amount in controversy is $9,388,800 ($40/hour x 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:24-cv-07449 MWC (PDx) | Date: March 7, 2025 |
| Title  James Connor v. O Positive, LLC *et al.* | |

hours/day x 30 days x 3,912 separated employees x 20% violation rate). This total still exceeds the $5 million CAFA threshold. *See Arias*, 936 F.3d at 927 ("'The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability' . . . . [T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover . . . . An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less' than the requisite . . . amount . . . . [A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" (citations omitted) (emphasis in original)).

    C.    Plaintiff's Remaining Claims

Because the waiting time claim alone exceeds CAFA's amount in controversy threshold, the Court need not determine estimates for Plaintiff's remaining damages requests (e.g., meal periods, rest breaks, attorneys' fees). *See Garcia*, 2024 WL 428995, at *10 (deciding there was no need to determine exact attorneys' fees because the claims already exceeded the CAFA amount in controversy requirement).

In sum, the Court concludes Defendant has carried its burden to establish by a preponderance of the evidence that the amount in controversy is met.

IV.    Conclusion

For the foregoing reasons, Plaintiff's motion to remand is **DENIED.**

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | TJ |